# Supreme Court of Florida

---

No. SC2023-1576

---

**MOHAMMED BOUAYAD,**
Petitioner,

vs.

**NORMANDY INSURANCE COMPANY, et al.,**
Respondents.

July 9, 2026

MUÑIZ, J.

An unknown assailant shot Mohammed Bouayad while he walked at midnight from an inside location to an unsecured outside location at his employer's place of business. A judge of compensation claims (JCC) found Bouayad eligible for workers' compensation benefits, relying in part on this Court's decision in *Strother v. Morrison Cafeteria*, 383 So. 2d 623 (Fla. 1980). In that case, we upheld an award of workers' compensation benefits to a cashier for injuries she sustained after being assaulted and robbed by men who followed her home from work, thinking she carried

cash deposits. *See id.* at 623-24, 628.

In the decision under review, *Normandy Insurance Co. v. Bouayad*, 372 So. 3d 671 (Fla. 1st DCA 2023), the First District Court of Appeal held Bouayad's injuries non-compensable, reasoning that they did not arise out of work performed by Bouayad, as required by Florida's workers' compensation law. *Id.* at 682; *see* § 440.09(1), Fla. Stat. (2018) (requiring compensation for accidental injury "arising out of work performed in the course and the scope of employment"). The district court also certified the following question as one of great public importance:

> Notwithstanding *Strother v. Morrison Cafeteria*, 383 So. 2d 623 (Fla. 1980), when an act of a third-party tortfeasor is the sole cause of an injury to an employee who is in the course and scope of employment, can the tortfeasor's act satisfy the occupational causation element, as defined by section 440.02(36), Florida Statutes [(2018)], necessary for compensability under the Worker's Compensation Law?

*Bouayad*, 372 So. 3d at 683.

We believe that the First District's decision, which departed from longstanding precedent governing the compensability of injuries sustained in workplace assaults, adopted an erroneous interpretation of the applicable statutory provisions. We also

believe that, as written, the certified question improperly incorporated a tort-based understanding of causation that is out of place in the workers' compensation context. Therefore, we rephrase the certified question as follows:

> When a third-party tortfeasor assaults an employee who is in the course and scope of employment, can the resulting injuries be compensable under the Workers' Compensation Law?

Our answer to the rephrased certified question is yes, provided that the workers' compensation claimant can meet his burden of establishing work-relatedness under the principles we explain in our decision today.

## I

## A

While wrapping up his workday as the general manager of a car rental business located on the premises of a hotel near Orlando International Airport, Bouayad was shot numerous times at close range by an assailant who emerged from a dimly lit area and who did not rob Bouayad. The unsolved crime, captured by a surveillance camera, took place around midnight on June 28, 2019, while Bouayad walked under a covered, outdoor walkway from the

- 3 -

hotel atrium (where his company's kiosk desk was located) to an outside office near the pool. At the end of each shift, Bouayad carried rental agreements and cash (if any) from the kiosk to that office. On the night in question, he worked the late shift because he was training new hires after having recently fired three employees (two for theft, one for drug use). Bouayad otherwise would not have been working that shift.

Though gravely injured by the assailant, Bouayad made his way back to the hotel atrium, where he collapsed and expressed his belief that he had been shot by "Robert"—a reference to Robert Aponte, who, one day earlier, had threatened to kill Bouayad's son. But Aponte was never charged in connection with the shooting of Bouayad. In fact, although "[t]he shooter's face was not clearly visible on the video," *Bouayad*, 372 So. 3d at 675, witnesses who knew Aponte—including Bouayad's son—opined that Aponte was not the assailant seen on the video.

After surviving the attack, Bouayad petitioned for workers' compensation benefits. The carrier, Respondent Normandy Insurance Company, responded that the "[e]ntire claim [was] denied" on the ground that "the incident did not arise out of

- 4 -

employment," as required by chapter 440, Florida Statutes. In the prehearing stipulation, Normandy listed its "affirmative defense[]" as: "[A]ssault was an intentional and personal, non-work related event." Post-hearing, Normandy's more nuanced position was that Bouayad failed his burden of establishing "arising out of," given that "both the identity of the shooter and the motive for the shooting are either (1) unknown; or (2) relate to a non-work related family dispute." In Normandy's view, the record thus supported only one of two conclusions: that the shooting was Aponte-related or had some other non-work connection.

B

At the final hearing, Bouayad of course attempted to establish that the shooting was "work related." He did more than just present evidence suggesting that Aponte "was not the shooter." *Bouayad*, 372 So. 3d at 675. Consistent with longstanding workers' compensation precedent, Bouayad also introduced evidence regarding the risks and hazards of his employment, including the nature of his job duties, his work hours, and the location of the business (in a high-turnover hotel near the airport, where the crime rate was higher than near Bouayad's residence).

Based on these and other factors, Bouayad's experts concluded that he "faced an increased risk of becoming a crime victim when at work." *Id.* One expert also testified that "the dimly lit area and the surrounding vegetation along the walkway between the kiosk and the office . . . contributed to Bouayad becoming a crime victim while at work." *Id.* at 675-76.

Normandy in turn introduced testimony of its own experts. The takeaways from that testimony were: "the shooting was a targeted attack" and "not a robbery"; the risk of violent crime was higher near Bouayad's residence than near the hotel; "the lighting . . . was sufficient" along the walkway; and Bouayad "was not at an increased risk of crime at the hotel." *Id.* at 676.

After a final merits hearing, the JCC eventually issued an amended order awarding benefits to Bouayad. In that order, the JCC framed the sole issue as whether Bouayad's "injuries arose out of his employment." The JCC then explained why this Court's 1980 decision in *Strother*—an assault and robbery case in which the "arising out of" requirement was satisfied—remained "good law."

The JCC next set forth his findings of fact and conclusions of law. Among other things, the JCC found that Bouayad "was

walking alone in an unsecured area" and that "the area from which the shooter emerged . . . was dark," making Bouayad "more vulnerable to an unexpected attack." The JCC accepted—as "consistent with the evidence"—the opinion of one of Bouayad's experts that the work environment presented "enhanced risks of injury." Accordingly, the JCC concluded that Bouayad's "employment substantially contributed to the risk of an attack and to risks [to] which [he] would not normally be exposed." In doing so, the JCC also noted specific risks of Bouayad's job duties, including potential retaliation from fired employees.

But the JCC also accepted the opinion of one of Normandy's experts, who opined that the attack was "targeted violence." Based on that opinion (and the expert's reasoning), as well as the time of day of the attack and the assailant's hiding spot, the JCC inferred that the assailant knew Bouayad would be working the late shift and knew his end-of-shift walking route.

In the end, the JCC concluded that Bouayad "established [that] his] injuries arose out of his employment." Specifically, the JCC found that "by the greater weight of the evidence, the reason for the targeted attack was more likely than not related to the termination

- 7 -

of a prior employee(s) or other job related issue rather than the incident with Robert Aponte" or "personal reasons."[1]  The JCC further concluded that the attack was "facilitated by the work environment."  Lastly, the JCC explained why workers' compensation case law supported a finding of compensability.

## C

The First District vacated the JCC's order on appeal, reasoning as follows.  The district court began by narrowly defining "work performed," observing that, at the time of the shooting, Bouayad was performing the "work" of "walking between two of [his employer's] facilities."  *Bouayad*, 372 So. 3d at 679.  From there, the district court explained that, although Bouayad was shot while performing the duty of walking, "the walking itself" did not "cause Bouayad to suffer injuries from a shooting."  *Id.*  In other words, to prevail, Bouayad would have had to show that "he was shot **as a direct result of** the walking (arising out of)."  *Id.* at 680 (bold emphasis in original).  But Bouayad could not meet that burden,

---

1.  The JCC alternatively explained why the injuries were compensable even if the attack was Aponte-related, a robbery gone bad, or a random act of violence.

- 8 -

according to the district court, because "it was the act of the shooter that caused his injuries." *Id.* So the district court held that Bouayad's injuries were non-compensable. Near the end of its opinion, the district court faulted "*Strother* and the decisions that follow it" for "import[ing] a risk exposure element into the analysis of occupational causation—contrary to the Legislature's express intent for occupational causation to turn on whether the work performed caused the employee's injury." *Id.* at 683.

Judge Kelsey dissented, arguing that the majority wrongly departed from *Strother* and the First District's own precedents. According to Judge Kelsey, the compensability determination turns on whether Bouayad's workplace exposed him "to an increased hazard of becoming a crime victim." *Id.* at 687 (Kelsey, J., dissenting). Surveying the case law, Judge Kelsey concluded that "[t]o any extent that it is necessary for claimants injured by workplace crimes to show work-connectedness, . . . the showing is made by demonstrating increased hazards or exposure to risk." *Id.* at 692. And Judge Kelsey opined that Bouayad made that showing. *Id.* at 693.

After the First District denied Bouayad's motion for rehearing

en banc, we accepted jurisdiction based on the certified question. Art. V, § 3(b)(4), Fla. Const.

## II

## A

The certified question grows out of the First District's reading of the phrase "arising out of work performed in the course and the scope of employment" in section 440.09(1), the workers' compensation statute's coverage provision. Bouayad argues, among other things, that the district court's reading of the statute wrongly focuses on "the physical mechanics of one's specific work task," causing the district court to err.

For its part, Normandy does not attempt to defend the First District's reading of the statute. Indeed, Normandy does not argue (nor did Normandy ever argue below) that the statute looks to a discrete work task and whether that task is "itself" what "cause[d]" the injury. *See Bouayad*, 372 So. 3d at 679. Accordingly, Normandy does not suggest that the act of "walking" was the only relevant "work performed" by Bouayad. Nor does Normandy argue that injuries "caused" by third-party tortfeasors are non-compensable. Instead, Normandy *agrees* with Bouayad that

- 10 -

compensability for workplace assaults "turns on proof of work-relatedness"—a standard that courts have long employed in workers' compensation cases. Normandy simply argues that the JCC's findings regarding work-relatedness lacked competent, substantial evidence and that the shooting resulted from a personal, non-work-related risk.

B

To address the certified question, which hinges on statutory interpretation, we begin with the text of the two statutory provisions at the heart of the parties' dispute. First, the workers' compensation coverage provision, section 440.09(1), says: "The employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death *arising out of work performed in the course and the scope of employment.*" § 440.09(1), Fla. Stat. (2018) (emphasis added). In this case, it is undisputed that Bouayad's shooting occurred in the course and scope of his employment; only the statute's "arising out of" element is contested here.

Second, section 440.02(36), located in the "definitions" section of chapter 440, says: " 'Arising out of' pertains to occupational

causation.  An accidental injury or death *arises out of employment if* work performed in the course and scope of employment is the major contributing cause of the injury or death."  § 440.02(36), Fla. Stat. (2018) (emphasis added).[2]

The version of the coverage provision (section 440.09(1)) at issue here dates to 1994 amendments to Florida's workers' compensation law.  *See* ch. 93-415, §§ 2, 5, Laws of Fla.[3]  Before those amendments, the coverage provision read: "Compensation shall be payable under this chapter in respect of disability or death of an employee if the disability or death results from an injury

---

2.  The First District concluded that the need to undertake the statutory "major contributing cause" analysis was not triggered in this case, because Bouayad failed to establish any occupational causation *at all*.  *See Bouayad*, 372 So. 3d at 678 (no need to consider the relative contribution of non-work causes proven by the carrier until the claimant has "satisfied his burden of showing that his injury occurred in the course and scope of employment and arose out of the work performed").  Because the parties have focused their arguments on the threshold question of how to establish the arising out of/occupational causation element in the first instance, we too will forgo further discussion of the statutory term "major contributing cause."

3.  The amendments were passed in 1993 but did not go into effect until January 1, 1994.  *See* ch. 93-415, § 112, Laws of Fla. Consistent with the decision below, we refer to the amendments as the 1994 amendments.

*arising out of and in the course of employment.*"  § 440.09(1), Fla. Stat. (1991) (emphasis added).  Before the 1994 amendments, the definitions section of chapter 440 did not address the phrase "arising out of."

Although the First District did not engage in a close textual comparison of the workers' compensation law before and after the 1994 amendments, the court suggests that its analysis turned largely on its interpretation of the phrases "work performed" and "occupational causation," which became a part of the statute on January 1, 1994.  As we have explained, the district court started from the premise that "[t]he only work activity performed by Bouayad at the time of the shooting was walking from the kiosk to the outer office while carrying a rental agreement."  *Bouayad*, 372 So. 3d at 682.  And it then concluded that there was no "occupational causation" because "Bouayad's walking in the performance of his work did not cause him to suffer injuries from a shooting."  *Id.* at 680 n.2.

We are not persuaded that the statutory text supports the First District's narrow focus on the task performed at the time of injury or the First District's view of causation in the workers'

compensation context. Given the Legislature's repeated use of broad language, the better reading of "arising out of work performed" and "occupational causation" is what courts have long said—the accident (and resulting injuries) must have a work-relatedness in the sense of a nexus or link to the employee's "work" (i.e., "job"). *Cf. Taylor v. Sch. Bd. of Brevard Cnty.*, 888 So. 2d 1, 5 (Fla. 2004) ("The right to compensation benefits depends on one simple test: Was there a work-connected injury?" (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation, Desk Edition* § 1.03, at 1–4 to 1–5 (2003))). Or as Bouayad puts it, "work [performed]" "encompasses all activities a worker does for money and includes all of the risks accompanying such work activities." *Cf. Silberberg v. Palm Beach Cnty. Sch. Bd.*, 335 So. 3d 148, 155 (Fla. 1st DCA 2022) ("The supreme court early on started looking at [the link between work and injury] through the lens of relative risk.").

For starters, the Legislature says that the phrase "[a]rising out of" "pertains to occupational causation." § 440.02(36), Fla. Stat. This language broadly signals that the focus is on the "occupation[]," not on a discrete work task. And the word "pertains"

- 14 -

is widely understood to generally mean "relates to" or "concerns." For example, *The American Heritage Dictionary* defines "pertain," in part, as "[t]o have reference; relate." *Pertain, The American Heritage Dictionary of the English Language* 1352 (3d ed. 1992). We doubt the Legislature would use such broad language to ultimately mean something as narrow as the First District's understanding of the statute—i.e., that the discrete job task performed at the time of injury must itself have caused the injury.

Other textual clues undermine the First District's focus on an isolated task rather than on an employee's overall work duties and work environment. For example, the second sentence of section 440.02(36) itself echoes the pre-amendment "arises out of employment" language. This reinforces that the focus remains on the "employment" and that the breadth of "work performed" is greater than any discrete task.

Also weighing against the First District's narrow interpretation, particularly with respect to causation, is that the phrase "arising out of" generally has a broad sweep, one that merely requires some connection or link. An injury "arising out of work performed" is not synonymous with an injury "*caused by* work

- 15 -

performed," certainly not from a tort-causation standpoint. *Cf. Blish v. Atlanta Cas. Co.*, 736 So. 2d 1151, 1153 (Fla. 1999) (explaining that, in the PIP phrase "arising out of the use of a motor vehicle," the clause " 'arising out of' does not mean 'proximately caused by,' but has a much broader meaning," one that merely requires "some nexus between the motor vehicle and the injury" (emphasis omitted) (quoting *Gov't Emps. Ins. Co. v. Novak*, 453 So. 2d 1116, 1119 (Fla. 1984))). For example, if someone says that litigation "arose out of" an accident, it does not mean that the accident "caused" the litigation. It simply means that the litigation emanated from the accident.

Here, in repeatedly framing the act of "walking" as the only relevant "work performed" and in concluding that *that* discrete task must "itself" have "cause[d]" the injury, the First District not only conflated "arising out of" and "caused by," but also misread the statute to say "[the task] performed [at the time of injury]" rather than just "work performed."

Reading the section 440.09(1) coverage provision in the broader context of the workers' compensation law also cuts against the First District's interpretation. For example, section 440.39—

- 16 -

titled "Compensation for injuries when third persons are liable."—is entirely devoted to compensability of injuries caused by third-party tortfeasors. *See generally* § 440.39, Fla. Stat. (2018) (providing lien rights to the employer/carrier if "an employee . . . is injured or killed in the course of his or her employment by the negligence or wrongful act of a third-party tortfeasor"). Under the First District's approach to occupational causation, the third-party tortfeasor—rather than "work performed"—will always be the "cause" of the injury, rendering the injury non-compensable in all instances. Courts, of course, strive to read related statutory provisions together, "in a manner that produces a harmonious whole." *Parks v. State*, 411 So. 3d 414, 418 (Fla. 2025) (citing *Tsuji v. Fleet*, 366 So. 3d 1020, 1025 (Fla. 2023)). The disharmony resulting from the First District's interpretation is yet another reason to reject that interpretation.

Relatedly, the First District's "causation" focus, *see* 372 So. 3d at 680 ("[I]t was the act of the shooter that caused [Bouayad's] injuries."), wrongly introduces tort causation into the analysis of occupational causation. The workers' compensation system is *not* a tort system. *See, e.g.*, § 440.015, Fla. Stat. (2018) (explaining that,

- 17 -

among other things, "[t]he workers' compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike," and is intended to be "an efficient and self-executing system"); *see also Bouayad*, 372 So. 3d at 679-80 ("No doubt the workers' compensation system is a no-fault system."). Because the workers' compensation system is not a tort system, the relevant question here has never been whether the third-party tortfeasor "caused" Bouayad's injuries. Rather, the relevant question is—as Normandy readily concedes—whether the injuries have work-relatedness. Workplace assault cases are no exception.

In short, the statutory text does not support the First District's narrow focus on the one task performed at the time of injury or the First District's view of "causation." So we reaffirm the longstanding precedents that more broadly look to work-relatedness—whether the injury is connected to the employee's work. We disagree with the First District's apparent view that the 1994 amendments to the statutory text have undermined the occupational causation analysis in "*Strother* and the decisions that follow it." *Bouayad*, 372 So. 3d at 683. Instead, we agree with *both* parties that—in Normandy's

own words—"[w]orkplace assaults are covered where the assault relates to the employment."

C

To determine work-relatedness, the "necessary inquiry" is whether a claimant's "accident arose out of a risk incidental to work—whether a work risk somehow caused or contributed to the injury." *Sentry Ins. Co. v. Hamlin*, 69 So. 3d 1065, 1071 (Fla. 1st DCA 2011). In the context of workplace assaults, one way for a claimant to establish work-relatedness is through proof that the assailant had a work-related criminal motive—for example, that the injury occurred during a robbery, as in *Strother*. But, as an independent basis for identifying work-relatedness, courts have properly considered whether the overall job duties and work environment exposed the employee to increased risks and hazards that brought about the injury.

For example, in *Lovin Mood, Inc. v. Bush*, 687 So. 2d 61, 62 (Fla. 1st DCA 1997), the First District found "the necessary causal connection between [the victim's] injuries and her employment" when an employee, working alone in "a store located in a somewhat isolated area of the mall," was raped by a customer. In *Jenkins v.*

*Wilson*, 397 So. 2d 773 (Fla. 1st DCA 1981), the First District found an injury compensable when a law firm secretary was abducted as she walked after work from her work building to the parking lot and was then raped. The assailant's "motive for selecting [the woman] as his victim remain[ed] unknown." *Id.* at 774. The court nonetheless held that the victim's injury was work related because her "employment created a hazard from which her injury arose." *Id.* at 775. Specifically, the victim "stayed late at work on the afternoon in question and, as a consequence, was alone in the parking lot at that later hour. Therefore, as a result of her employment, she was more susceptible to such an attack." *Id.*

Because proof of risk exposure can be sufficient to satisfy the occupational causation requirement in workplace assault cases, proof of a work-related motive for the assault (again, as in a robbery) is not required. In this regard, we agree with this observation by the First District in *Santizo-Perez v. Genaro's Corp.*, 138 So. 3d 1148 (Fla. 1st DCA 2014):

> [C]ourts can hyper focus on motive of a third party causing injury to an employee, ignoring a dangerous environment that also facilitated the injury. As Larson's points out, "[t]he error here is a simple one: The court assumes that the claimant must prove both that the

> environment increased the risk of the attack and that it was motivated by something related to the employment. The correct rule is that **either** one or the other is sufficient to establish the causal link." 1 Lex K. Larson, *Larson's Workers' Compensation* § 8.01 [1][b] (rev. ed 2013).

*Id.* at 1150 n.4 (second alteration in original) (bold emphasis in original).

To be sure, precedent shows that not all workplace assaults are compensable. For example, in *San Marco Co. v. Langford*, 391 So. 2d 326, 326-27 (Fla. 1st DCA 1980), the First District concluded that an employee-on-employee shooting did not satisfy the "arising out of" requirement where it was "clear" from the evidence "that the assault . . . was the result of personal animosity" and that the employment had contributed nothing to the assault. As a predicate to its conclusion, the court favorably cited the following observation by Professor Larson: "When the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test." *Id.* (quoting 1 A. Larson, The Law of Workmen's Compensation, s. 11.21 (1978)); *cf. Silberberg*, 335

So. 3d at 155 (recognizing that "there is no compensability" where "the risk of accident comes exclusively from personal factors" (citing *Hamlin*, 69 So. 3d at 1070)).

In this case, Bouayad introduced evidence attempting to establish the dangers associated with some of his "work" duties (e.g., firing employees, carrying cash late at night, etc.) *and* with the environment of the job. Based on that evidence, the JCC declined to find that the risk of injury in this case was "distinctly (or wholly) personal in nature"—i.e., that the risk was one that Bouayad "*imported* into the workplace." *Hamlin*, 69 So. 3d at 1070. Instead, the JCC concluded in part that Bouayad's "employment substantially contributed to the risk of an attack and to risks [to] which [he] would not normally be exposed." The First District summarily dismissed that evidence as "not provid[ing] competent, substantial evidence to show that the work performed by Bouayad—walking between two parts of his employer's premises— caused the injuries he suffered in the shooting." *Bouayad*, 372 So. 3d at 682. We believe that the First District erred by categorically refusing to consider whether Bouayad's risk exposure evidence satisfied the statute's occupational causation requirement.

We also disagree with Normandy's argument that Bouayad cannot prevail because (1) the JCC found that he was the victim of a targeted assault and (2) Bouayad has failed to establish the reason for the assault. That is just another way of arguing that Bouayad must prove a work-related motive for the assault, a premise we have rejected. Again, the test is whether Bouayad established that the "accident arose out of a risk incidental to work—whether a work risk somehow caused or contributed to the injury." *Hamlin*, 69 So. 3d at 1071. He is not required to more narrowly establish that—in Normandy's words—"being the victim of a targeted attempted murder is a hazard associated with employment . . . at rental car agencies."

## III

To sum up, we have rephrased the certified question as follows:

> When a third-party tortfeasor assaults an employee who is in the course and scope of employment, can the resulting injuries be compensable under the Workers' Compensation Law?

Our answer to the rephrased certified question is yes, provided that the claimant can meet his burden of establishing work-relatedness

- 23 -

under the principles we have explained in our opinion today. In particular, we repeat that one way for a claimant to establish work-relatedness in such cases is to prove that his overall job duties and work environment exposed him to an increased risk of assault. Accordingly, we quash the First District's decision on review in *Bouayad* and remand for the First District to conduct a proper competent, substantial evidence review, one applying the correct legal standard.

It is so ordered.

COURIEL, C.J., and LABARGA, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
TANENBAUM, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance & Direct Conflict of Decisions

    First District - Case No. 1D2021-1717

Michael J. Winer of the Winer Law Group, Tampa, Florida, and Charles Smith of C.W. Smith Law, P.A., Orlando, Florida,

    for Petitioner

William H. Rogner of HR Law, Orlando, Florida,

    for Respondent Normandy Insurance Company

Bob Burke, Oklahoma City, Oklahoma, and Megan Oliva of Bichler & Longo, PLLC, Maitland, Florida,

for Amicus Curiae Workers' Injury Law & Advocacy Group

Mark A. Touby of Touby, Chait & Sicking, P.L., Coral Gables, Florida,

for Amicus Curiae Florida Workers' Advocates

Mark L. Zientz of the Law Offices of Mark L. Zientz, P.A., Aventura, Florida,

for Amici Curiae Teamsters Local 385, Teamsters Local 79, Teamsters Local 991, Teamsters Local 947, Teamsters Local 512, Teamsters Local 769, Teamsters Joint Council #75, IBEW Local 177, International Association of Sheet Metal, Air, Rail and Transportation Local 435, and North Florida Building and Construction Trades Council

Geoffrey Bichler and Megan Oliva of Bichler & Longo, PLLC, Maitland, Florida,

for Amicus Curiae Florida State Lodge Fraternal Order of Police